(131 So. 6)

## SUTTON et al. v. BARTER et al.

### I Div. 877.

Court of Appeals of Alabama.

Oct. 7, 1930.

Rehearing Denied Oct. 28, 1930.

Harry T. Smith & Caffey, of Mobile, for appellants.

Gordon, Edington & Leigh, of Mobile, for appellees.

BRICKEN, P. J.

J. W. Barter and P. G. Barter, hereinafter styled contractors, entered into a contract with Lee E. Sutton and Roy Sutton, copartners doing business under the firm name and style of White Swan Laundry & Dry Cleaning Company, hereinafter styled laundry com-

pany, on the 30th day of June, 1924, whereby said contractors agreed to erect and complete a new laundry building for said laundry company according to plans, specifications, and details furnished by A. H. Downey, architect, at and for the sum of $19,250.

According to the plans, specifications and details, it was expressly provided: "All wood and concrete roofs to receive the "Barber" Genasco Standard Trinidad Lake Asphalt Built-up Roofing, put on as per Manufacturers Specifications. All necessary flashing to be put on and guaranteed by the Roofer. Any wood work or saddles, etc., must be done by the General Contractor under the direction of the Roofer who must furnish a ten year guarantee for this roof to the owner."

On June 30, 1924, said contractors executed a bond to said laundry company in the sum of $6,400, with James J. Barry and Mrs. Annie Sindik, as sureties, conditioned, among other things, that said contractors should "truly keep and perform the covenant, conditions and agreements," in the above said contract at the time and in the manner and form therein specified, as well as costs and attorney's fees, in the enforcement of said contract.

The present suit is brought upon the bond given to secure the performance of said contract. Count 1 of the complaint is based upon an alleged breach of said contract, and consequently a breach of said bond, in this: "The plaintiffs aver that the defendants breached their said contract in this, that the roofing put on said Laundry Building by them under said contract was not Barber Genasco Standard Trinidad Lake Asphalt Built-up Roofing, but was a quality inferior to the roofing so specified," and plaintiffs claimed $1,000, as damages, and $150, as attorney's fee, proximately resulting from said breach of said contract.

Count 2 of the complaint is for identically the same amount of damages alleged to be due, as the proximate result of a breach of said contract, and consequently of said bond, in this: "The plaintiffs aver that in and by the terms of the specifications made part of said contract, the said defendants agreed to execute all work described in the specifications in a workmanlike manner." And it is alleged, in this count of the complaint "that the roofing was not put on said Laundry Building in a workmanlike manner as said Contractors had agreed that it would be."

In so far as this case is concerned, according to the averment of the complaint, the contractors agreed and bound themselves to use (1) "Barber Genasco Standard Trinidad Lake Asphalt Built-up Roofing" in the construction of the roof of said building, and (2) "to put on said Barber Genasco Standard Trinidad Lake Asphalt Built-up Roofing on said Laundry Building in a workmanlike manner."

Under count 1 of the complaint the contractors, and their sureties, were liable to the laundry company, if, in the construction of said laundry building, the contractors did not use Barber Genasco Standard Trinidad Lake Built-Up roofing, and the specified damages proximately resulted from their failure so to do.

Under count 2 of the complaint said contractors and their sureties were liable to the laundry company if they did not use Barber Genasco Trinidad Lake Asphalt Built-Up roofing on said laundry building, put on in a workmanlike manner, and the specified damages proximately resulted from their failure so to do.

Count 1 of the complaint expressly states that the contractors failed to use the roofing specified. Count 2 of the complaint is equally clear in averment that, if the contractors did use the roofing specified, then they did not put it on said laundry building in a workmanlike manner. Under count 1 of the complaint the burden was on the laundry company to reasonably satisfy the jury by the evidence that the contractors did not use the roofing specified. Under count 2 of the complaint the burden was likewise on the laundry company to reasonably satisfy the jury that, if the contractors used the roofing specified, or, for that matter, a superior roofing thereto, then that said roofing was not put on in a workmanlike manner. The plaintiff company was further under the burden of showing that the damages sustained by it resulted as the proximate result of the breach of the contract and bond in one, or both, of the manners specified in the complaint.

The trial court gave to the jury the affirmative charge for the defendants as to count 1 of the complaint, and the jury found for the contractors under count 2, which was the only count submitted to the jury under the evidence.

The first assignment of error is based upon the giving of the general charge as to count 1 of the complaint. Under all of the evidence two facts are established without reasonable controversy: First, that the new laundry building was erected by the contractor; and, second, that the building leaked soon after it was completed.

A. H. Downey, a witness for the defendants, testified, among other things, that he was an architect by profession of thirty-eight years experience; that he was architect for the plaintiffs in the construction of the laundry building described in the complaint; that he inspected the work of the construction of the roof to the building as it went along, and that, in his best judgment, the work was done

in a workmanlike manner, and in the manner ordinarily used in laying roofs of that kind and type; that the work was done to the complete satisfaction and approval of the witness, and that he accepted the same after it was done; that the roof was the Barber Gcnasco Standard Trinidad Lake Asphalt Built-Up roof, as prescribed in the specifications.

Here is an unqualified statement from the architect employed by plaintiffs to see, after the construction of the laundry building, that the roofing used upon the building was the same roofing contracted for and as prescribed in the specifications. There is nothing in the testimony that disputes this statement. The fact that the roofing cracked, or had the appearance of an alligator's back, does not controvert the statement of the architect, because it abundantly appears in the testimony that any and all asphalt roofing will crack under certain circumstances, and that this is due to a natural tendency or trend of the asphalt.

We therefore hold that the trial court did not err in giving the affirmative charge, requested in writing, as to count 1 of the complaint.

As stated, count 2 of the complaint asserts that it was the duty of the contractors to put on the specified roofing in a workmanlike manner. It must be conceded that, if the roofing was not put on in a workmanlike manner, and damages proximately resulted therefrom, the defendants would be liable to the plaintiffs under this count of the complaint.

The specifications expressly provide that, in regard to the roofing: "All necessary flashing to be put on and guaranteed by the roofer."

Al H. Downey, the architect, a witness for the defendants, testified: "The flashing is a very necessary part of the roof. In fact it is the most important part. If that work wasn't done in a workmanlike manner, it would be bound to leak at the flashing." This witness had testified that, soon after the completion of the building, he either went with one of the contractors to the building or met him there, and found the building leaking down the side walls. He said: "In our examination we found that those leaks were coming from the flashing."

Lee E. Sutton, one of the plaintiffs, testified that the roof began to leak after the first rain. He said: "At first it started around our monitor, and later on it leaked all around the flashing, all over the building. I don't suppose there was twenty square feet in that building that didn't leak in one place or another." This witness further testified that from the time the building was completed,

down to the storm of 1926, the leaky condition, about which he testified, existed.

H. A. Muths testified that when he examined the building he found "the sheet metal flashing on the sides of the parapet walls in some places were out of joint they were supposed to be in—through expansion." This witness was an expert of several years experience.

J. W. Barter, one of the defendants, testified: "On one occasion, shortly after we completed the job, it was leaking around the down spouts and some flashing, and I was up on the roof with Mr. Lee."

Thus it seems to be clearly established by testimony, that, practically from the completion of the laundry building, the roof of the building leaked around the flashing. It further appears from the testimony of the architect, Downey, a witness for the defendants, that the flashing is the most important part of the roof, and that, if this work is not done in a workmanlike manner, then the roof is bound to leak at the flashing.

The plaintiff requested the court to give the following special written charge to the jury: "The court charges the jury that the fact that the work was done to the satisfaction of the architect is no defense to the defendants in this case, if, in fact the roofing put on plaintiffs building was inferior to that contracted for, or, if it was put on in an unworkmanlike manner."

This charge states a correct proposition of law applicable to the facts developed by the testimony upon the trial of this case, and its refusal by the trial court to plaintiffs constitutes error for which the judgment of the lower court must be reversed.

In its oral charge to the jury, the court stated, in substance, that the satisfaction of the architect with the workmanlike manner in which the roof was constructed by the contractor, or his subcontractor, was not binding on the plaintiffs in the case, if, in fact, and in truth, the work was not done in a workmanlike manner. The effect of this portion of the court's oral charge was, in substance, that the plaintiffs were not estopped from bringing their suit by the acceptance of the work by their architect, if, in fact, the work was not done in a workmanlike manner.

To meet this phase of the court's oral charge, or in explanation of their insistence governing the contractual relationship between plaintiffs and defendants as to the workmanlike manner in which the construction of the roof had to be done under the contract, the defendants requested and obtained the following written charge: "(4) The court charges the jury that if they believe from the evidence in this case that the roofing was put upon the building in a

workmanlike manner they must return a verdict for the defendants."

The plaintiffs were entitled to the charge quoted hereinabove to meet the special charge requested by the defendants, and, also, because said charge correctly expresses the law applicable to the insistence that the work was not done in a workmanlike manner.

As this case must be reversed, it is deemed necessary to say that upon another trial plaintiffs will be entitled to prove any damage to their building arising from the leaky roof complained of, and of the costs of restoring said building to its condition before said leak impaired or marred it in anyway; the costs of any labor or damage in the operation of their plant brought about by the leaky condition of said roof. That is to say, plaintiffs are entitled to prove any actual damages sustained by them by reason of the unworkmanlike manner in which the roof on the laundry building was put on.

Reversed and remanded.